UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1469(DSD/JMM)

Gary Mayer,

Plaintiff,

v.

**ORDER**

Nextel West Corporation, a Delaware corporation,

Defendant.

George E. Antrim III, Esq. and Krause & Rollins, 310 Groveland Avenue, Minneapolis, MN 55403, counsel for plaintiff.

Robert C. Castle, Esq., Scott S. Payzant, Esq., David Jordan-Huffman, Esq. and Oppenheimer, Wolff & Donnelly, 3400 Plaza VII Building, 45 South Seventh Street, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on defendant's motion for summary judgment [Docket No. 14]. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

Plaintiff Gary Mayer ("Mayer") was employed by defendant Nextel West Corporation ("Nextel") from January 9, 1997 until September 30, 1999 as a sales manager. Mayer was 57 years old when Robert Wahner, then 58 years old, hired him to work at Nextel.

FILED 12-11-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 12-11-01
Deputy Clerk's Initials ______

After two months on the job, Mayer was promoted to the position of major account sales manager. In this position, Mayer supervised Nextel's sales personnel who worked with the company's largest accounts.

On March 18, 1997, Mayer received his first performance review as a Nextel employee. Robert Wahner, the company's general manager and Mayer's supervisor, completed the evaluation and gave Mayer a "competent" rating.

In July 1997, Phil Callahan, then 35 years old, ("Callahan") replaced Robert Wahner as general manager and Mayer's supervisor. On January 15, 1998, Callahan gave Mayer a performance review. The review stated that Mayer "performed satisfactorily" overall. Out of 12 categories, Mayer received a "competent" in ten categories and "development required" in two categories. These two categories were "Work Results," which directed Mayer to improve meeting the company's quota requirements, and "Selection," which directed Mayer to focus on hiring the "Right" people to fill empty positions. The performance review does not define who constitutes the "Right" person. In his affidavit, Callahan states that the "Right" person would be "one with two to six years of sales experience." (Callahan Dep., p.54.) In the category of "Job Knowledge/Know-How," Mayer received a "competent" rating. However, Callahan added a written comment stating that he would like to see Mayer "improve his product knowledge."

On January 27, 1999, Callahan gave Mayer another performance review. Mayer's overall rating was "meets requirements." In 31 of 36 review categories, Mayer received a "meets requirements." In three areas, Mayer received a "very good" rating, and in three categories Mayer received a "requires improvement." The categories requiring improvement were "Initiative," "Listening" skills, and "Selection" of new employees. Under the "Selection" category, Callahan commented that he would "like to see Gary spend more time interviewing candidates."

In August 1999, Callahan prepared a written mid-year evaluation of Mayer. In this evaluation, Callahan stated that Mayer improved his work habits but still needed to work on his listening skills. Callahan created a "Corrective Action Plan" for both of these areas, which is required for any skill in which a Nextel employee receives a "Requires Improvement" on a performance review.

On September 30, 1999, Callahan fired Mayer. Nextel asserts that it fired Mayer due to his poor business judgment, poor business knowledge and his poor management skills. Mayer challenges his termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634, the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, and Minn. Stat. § 181.81. Defendant now moves for summary judgment and the court grants the motion.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**B. Age Discrimination**

The ADEA makes it unlawful for an employer to discriminate against an employee on the basis of the employee's age. 29 U.S.C. § 623(a)(1). Because the parties agree that Mayer's claims are based on circumstantial evidence, rather than direct evidence, the court applies the burden shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (8th Cir. 1973).[1] Under this framework, Mayer must first establish a prima facie case of age discrimination. Id. at 802.

If Mayer establishes a prima facie case of age discrimination, the burden of production shifts to Nextel to articulate a legitimate, nondiscrimanatory reason for any adverse employment action taken against Meyer. McDonnell Douglas Corp, 411 U.S. at 802. If Nextel puts forth such a reason, Mayer must then present

[1] ADEA and MHRA claims are analyzed under the same McDonnell Douglas burden-shifting framework. Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1208 n.6 (8th Cir. 1007) (reviewing MHRA claim under same standards as ADEA claim). Courts also apply the same ADEA and MHRA framework to clams brought pursuant to Minn. Stat. § 181.81. DeRoche v. All Am. Bottling Corp., 38 F. Supp. 2nd 1102, 1108 (D. Minn. 1998) (recognizing that Minn. Stat. §§ 181.81 and 363 are closely related in their statutory purpose but Section 181.81 provides "a more limited spectrum of relief"). Therefore, if Mayer cannot establish that he was discriminated against under the ADEA, he likewise has no claim for age discrimination under the MHRA or Minn. Stat. § 181.81.

evidence sufficient to raise a question of material fact as to whether Nextel's proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment decision. Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999). At all times, the burden of persuasion remains with Mayer. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

**1. Prima Facie Case**

To establish a prima facie case of age discrimination, Mayer must show that (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) his employment was terminated; and (4) he was replaced by a younger person. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Mayer has met his burden of establishing a prima facie case of age discrimination. Both parties concede that Mayer was terminated, that he was a member of a protected age group at the time of his termination, and that he was replaced by a younger person at Nextel. (Mem. Law Supp. Def.'s Mot. Summ. J. p.16., Mem. Law Opp'n Def.'s Mot. Summ. J. p.21.) The only prong of this test that is in dispute is whether Mayer was performing his job at a level that met Nextel's legitimate expectations. The evidence shows that Mayer was performing his job at a level that met Nextel's legitimate expectations.

Nextel asserts that Mayer was terminated for multiple reasons, including poor business judgment, poor business knowledge, and poor management skills. Nextel offers Mayer's performance evaluations as evidence of Mayer's poor performance as an employee at Nextel. Such evidence includes Mayer's January 15, 1998, performance review, in which Callahan states that he would like to see Mayer improve his product knowledge and meeting the company's sales quota. Callahan also indicated that he would like to see Mayer gather more information before making decisions, spend more time monitoring his employees and hire the "Right" person for the job, not just fill headcount slots.

In addition, Nextel also offers Mayer's January 27, 1999, review as evidence of Mayer's poor performance at Nextel. On this review, Callahan states that he would like to see Mayer "initiate more," take more notes, spend more time interviewing candidates, improve product knowledge and delegate less work to other employees. Finally, Nextel contends that the 1999 mid-year evaluation is proof that Mayer was not successfully performing his duties as a sales manager. In that evaluation, a corrective action plan was created for Mayer to help him improve his listening skills, employee management skills and product knowledge. Nextel asserts that for these multiple reasons they were justified in terminating Mayer's employment with the company.

Although Mayer's performance evaluations do indicate that Mayer needed to improve some of his management skills, they also establish that Mayer met Nextel's legitimate employment expectations. In all of Mayer's performance reviews between 1997 and 1999, Mayer's performance as a Nextel employee was rated as "meets requirements" or the equivalent. Although Callahan indicated that Mayer needed to improve in three areas in his January 1999 review, Mayer also received a "very good" rating in three areas in that same review. Similarly, even though Callahan indicates in the 1998, 1999 and 1999 mid-year reviews that Mayer needs to make improvements, Mayer is still rated by Callahan as an employee who "meets" Nextel's requirements. Based on this information, a reasonable jury could conclude that Mayer was performing satisfactorily at the time of his termination.[2]

---

[2] The court notes that in <u>Miller v. Citizens Security Group, Inc.</u>, 116 F.3d 343 (8th Cir. 1997), the court held that performance evaluations that were more than one year old at the time the plaintiff was terminated could not be used as proof that the plaintiff was performing his job in a manner that met the employer's legitimate expectations at the time of termination. <u>Id.</u> at 346. However, this case is distinguishable from <u>Miller</u> in that Nextel has offered as evidence two performance evaluations that Mayer received in the same year he was terminated, one of which he received only one month prior to his termination. The court looks to the 1997 and 1998 performance evaluations only as proof that Mayer was consistently performing at a level that Nextel deemed to "meet" its expectations, and that performance level did not change in the year Mayer was terminated according to his 1999 performance reviews. In addition, Nextel offered Mayer's 1998 performance evaluation as proof that Mayer exhibited poor product knowledge. (Mem. Law Supp. Def.'s Mot. Summ. J. at p.11.) Because Nextel offered the 1998 evaluation as evidence that Mayer was not (continued...)

In Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001), the plaintiff established a prima facie case of age discrimination under facts similar to Mayer. In Sprenger, the plaintiff received a series of reviews that indicated he needed to improve his skills in areas such as working with co-workers, developing marketing concepts for his employer, and job knowledge. Id. at 1109-10. In 1997, the plaintiff's evaluation gave him an overall rating of "expected." Id. at 1109. In 1998 the plaintiff received an overall rating of "needs improvement." Id. at 1109-10. Two months later, the plaintiff received a revised performance review which rated his performance as "expected." Id. at 1110. Based on these facts, the parties stipulated that the plaintiff met his burden of showing that he was performing in accordance with his company's legitimate expectations. Id. at 1111.

In this case, Mayer received a "meets requirements" on all of his performance reviews. Although Mayer needed to improve his management skills, the standard to be applied in assessing performance is not that of the ideal employee, but rather what the employer could legitimately expect. Keathley, 187 F.3d at 920. As

---

[2](...continued)
performing according to their legitimate expectations, despite the fact that it was more than one year old at the time of Mayer's termination, the court finds it reasonable to consider this evaluation in determining if Mayer was performing at a level that met Nextel's legitimate expectations.

in Sprenger, the information contained in the reviews shows that Mayer's performance was adequate at the time of his termination. Therefore, Mayer has met his burden of showing that he performed his job at a level that met Nextel's legitimate expectations and he has established a prima facie case of age discrimination.

**2. Legitimate, Nondiscriminatory Reason for Dismissal**

Because Mayer has established his prima facie case of age discrimination, the burden of production now shifts and Nextel must come forward with a legitimate, nondiscriminatory reason for the dismissal. McDonnell Douglas Corp., 411 U.S. at 802. In Fisher, the plaintiff met his burden of establishing a prima facie case of age discrimination and the burden shifted to the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's transfer. 225 F.3d at 920-21. The court found that the defendant met this burden by stating that plaintiff was transferred due to his lack of product knowledge, inability to communicate effectively with customers, unprofessional conduct during sales calls and a poor performance evaluation. Id. at 921.

As in Fisher, defendant in this case asserts multiple nondiscriminatory reasons for terminating Mayer's employment. Nextel states that Mayer was terminated because his sales team was not meeting its full potential, Mayer refused to take forecasting seriously and he had a lack of product knowledge and poor business judgment. Nextel offers multiple examples of Mayer's conduct as

evidence to support these assertions. Further, Mayer concedes that Nextel met its burden of production under this prong of the test. (Mem. Law. Opp'n Def.'s Mot. Summ. J. p.22-23.) Based on this evidence, the court finds that Nextel has met its burden of producing legitimate, nondiscriminatory reasons for terminating Mayer's employment.

**3. Pretext**

Because Nextel has met its burden of providing a legitimate, non-discriminatory reason for terminating Mayer's employment, Mayer must now demonstrate that Nextel's proffered reasons are pretextual. Keathley, 187 F.3d at 919. The Supreme Court has stated that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). The Supreme Court, however, emphasized that:

> [t]his is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set further sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. Id.

While the court finds that Mayer has presented sufficient evidence to cast doubt upon each of Nextel's asserted reasons for his

termination, the court finds that Mayer does not provide sufficient evidence for a factfinder to conclude that Nextel's actions were motivated by discriminatory animus.

Turning first to the issue of pretext, the court concludes that Mayer has provided evidence that casts doubt on Nextel's proffered reasons for terminating him. As previously stated, Mayer established a prima facie case of age discrimination by showing that he was performing in accordance with Nextel's legitimate employment expectations. Mayer's reviews indicate that he was performing at a level that met Nextel's employee requirements. See Bevan v. Honeywell, Inc., 118 F.3d 603, 610 (8th Cir. 1997) (stating that a history of favorable performance ratings support finding that employer's proffered reason for adverse employment action was false). Mayer also was never placed on a PIP to help him improve his management skills. Nextel created this plan to help employees overcome deficiencies in their work to avoid termination. Nextel has utilized this plan to help other employees meet employment standards. Because Mayer consistently received the rating of "meets requirements" on his performance reviews, up to the month prior to his termination, the court finds that Mayer has raised an issue of material fact as to whether Nextel's proffered reasons for termination were pretextual.

Having found that Mayer has raised an issue of material fact regarding pretext, the court next considers whether he has

presented sufficient evidence to raise a reasonable inference that age was a determinative factor in his termination. In Reeves, the Supreme Court clarified what types of evidence may give rise to an inference of intentional discrimination. As discussed, the Court stated that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification for an adverse employment action is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. Id. at 148. The Court, however, emphasized that proof that defendant's proffered reasons for terminating plaintiff are pretextual does not necessarily establish that plaintiff's proffered reason is correct. Id. at 146-147 (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524 (1993)). The Court recognized that there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. Reeves, 530 U.S. at 148;

In Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328 (8th Cir. 1996), plaintiff sued his former employer alleging he was discharged because of his age. In considering defendant's motion for summary judgment, the Eighth Circuit stated that "[i]n the context of summary judgment, the question thus becomes whether, in a case where the employee has established a prima facies case and

has presented sufficient evidence for a jury to disbelieve the reasons proffered by the employer, the trial court nevertheless may decide as a matter of law that the evidence is insufficient for a reasonable jury to infer age discrimination and therefore may grant summary judgment to the employer." Id. at 1335. The court concluded that plaintiff's prima facie case of age discrimination and his evidence that defendant's proffered reasons for his discharge were pretext were insufficient, as a matter of law, to allow a reasonable fact finder to infer intentional discrimination based on age. Id. at 1337. The court reasoned that plaintiff presented neither direct evidence nor sufficient circumstantial evidence for a reasonable factfinder to infer that plaintiff's age motivated his defendant's decision to terminate him. Id. at 1337.

As in Rothmeier, in this case Mayer has failed to prove that age was a determinative factor in Nextel's decision to terminate his employment. Mayer's prima facie case does not include any evidence which clearly establishes that he was terminated due to his age. Similarly, although Nextel's proffered reasons for terminating Mayer may be pretextual, no reasonable factfinder could conclude that Mayer's termination was based on age discrimination.

Mayer's primary proof that he was terminated due to his age is Callahan's written comment on his January 15, 1998, review which directed Mayer to focus on hiring the "[r]ight" people to fill empty positions. Callahan defined the "right" person as one with

two to six years of sales experience. Mayer interprets this statement to include only younger individuals, as they will be most likely to have only two to six years of sales experience. However, this is a narrow interpretation of the statement. Any adult could potentially have two to six years of sales experience. This standard could just as easily apply to a 55-year-old person as a 25-year-old person. The court believes that Callahan's statement was meant to convey Nextel's desire to hire people with some sales experience, rather than people with no experience at all.

Mayer also asserts the fact that he was not placed on a PIP as proof of age discrimination. Mayer states that Nextel previously placed younger employees on the PIP in an effort to help them meet the company's employee requirements rather than be terminated. Mayer contends that Nextel's failure to place him on a PIP demonstrates that he was terminated due to his age. While the court takes notice of the fact that Nextel did not offer Mayer an opportunity to improve his management skills through a PIP, this fact in itself does not prove age discrimination. There could be any number of reasons why Nextel did not place Mayer on a PIP. This fact, without more, simply does not prove age discrimination.

Finally, Mayer cites Fisher v. Pharmacia & Upjohn as a case in which the plaintiff established age discrimination based on facts similar to this case. This case is distinguishable from Fisher. In Fisher, the plaintiff was transferred due to his "inability" to

meet the expectations Pharmacia and Upjohn had of its corporate sales unit employees. Fisher, 225 F.3d at 918. The plaintiff, however, presented evidence that he was performing at a level that met Pharmacia and Upjohn's legitimate expectations. Id. at 920. Pharmacia and Upjohn met their burden of showing a legitimate reason for the plaintiff's transfers and the court analyzed whether this reason was pretextual and whether the evidence created a reasonable inference that age was a determinative factor in the plaintiff's transfer. Id. at 921-22. The court found that the plaintiff proved an inference of age discrimination through age-related remarks made to Fisher and other Pharmacia employees by members of Pharmacia's management. Id. at 922. These remarks included: "[w]e need to get rid of the old guys," and Pharmacia "wanted to bring some of the younger people along faster." Id.

In this case, unlike Fisher, Mayer has failed to provide any evidence of age-based animus which could lead to an inference of age discrimination. None of the evidence that Mayer provided to prove a prima facie case of age discrimination would create a reasonable inference that age was a determinative factor in Nextel's adverse employment decision. Similarly, none of the evidence Mayer provided to prove pretext creates a reasonable inference that age was a determinative factor in the adverse employment decision. Therefore, Mayer has failed to prove that he was terminated based on his age.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 14] is granted and plaintiff's claim is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 10, 2001

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# Please forward this announcement to the recipient of this fax.

---

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500